El menor ANTONIO RODRÍGUEZ, representado por su madre con patria potestad ANA RODRÍGUEZ, demandante y apelado, *v.* JUAN RAMÓN RAMOS, demandado y apelante.

Núm. 10597.—*Sometido:* Enero 2, 1952. *Resuelto:* Enero 10, 1952.

*Brown, Newsom & Córdova* y *R. Díaz Collazo,* abogados del apelante; *Víctor Rivera Colón,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Las alegaciones esenciales de la demanda en reclamación de alimentos, instada por el menor Antonio Rodríguez, re-

presentado por su madre con patria potestad Ana Rodríguez, contra Juan Ramón Ramos, pueden sintetizarse así: durante. los últimos meses del año 1931 y los primeros nueve del 1932 la madre del menor y el demandado tuvieron relaciones íntimas, como resultado de las cuales nació el demandante el 30 de septiembre de 1932; desde la fecha del nacimiento del menor hasta el presente éste se ha hallado en la posesión continua del estado de hijo natural del demandado, justificado por actos de éste y de sus familiares; la madre del demandante fué conocida viviendo en concubinato, tanto durante el embarazo como al tiempo del nacimiento del menor, fecha esta última desde la cual el demandado y sus familiares prodigaron a aquél sus caricias, en forma pública y notoria y le atendieron en sus enfermedades; en la actualidad el demandado no está pasándole alimentos al menor y éste carece de medios de fortuna con los cuales hacer frente a los mismos; el demandado es persona solvente, ya que posee bienes raíces por un valor en exceso de $150,000 y recibe rentas y beneficios de sus bienes y actividades que ascienden a más de $5,000 mensuales; y el menor necesita una suma no menor de $200 mensuales para cubrir sus gastos de vestuario, educación, medicinas, diversión y misceláneos. Se suplica se dicte sentencia condenando al demandado a pagar al demandante la indicada suma como pensión alimenticia, más $2,000 por concepto de honorarios de abogado.

Contestó el demandado negando los hechos esenciales de la demanda y fué el pleito a juicio, desfilando principalmente prueba testifical, ofrecida por ambas partes. En la opinión emitida por el tribunal inferior en apoyo de su sentencia aparecen las siguientes Conclusiones de Hechos:

"Allá para el mes de abril del año 1931, siendo ya el demandado casado con María Piñot Díaz, tenía dicho demandado un hotel en el pueblo de Manatí, Puerto Rico, conocido por Hotel Comercio, en el cual residía el demandado con su esposa y una hija pequeña y para esa fecha vino la madre del demandante, Ana Rodríguez, quien para entonces era una jovencita, a tra-

bajar en el servicio doméstico de la familia del demandado y ocupaba aquélla una habitación en el mismo hotel.

"En la misma habitación que ocupaba Ana Rodríguez en el referido hotel el demandado la indujo a tener relaciones carnales con él y por espacio de cuatro meses visitaba la habitación de dicha Ana Rodríguez, durante las horas de la noche, y tenía contacto carnal con ella hasta que allá para el mes de diciembre del mismo año 1931 Ana Rodríguez le informó al demandado que estaba encinta y éste alarmado por esto confesó su temor de que pudiera enterarse su esposa y la indujo a que regresara a casa de su madre en el Barrio Mameyes, de Utuado, y para calmarla le ofreció que la iba a comprar una casita y ponerla en una de sus fincas. El demandado continuó sus relaciones carnales con Ana Rodríguez en casa de la madre de ésta en el Barrio Mameyes, de Utuado, donde iba algunos días de la semana ocasionalmente, y todos los sábados por la tarde, quedándose a dormir con ella hasta el domingo por la mañana, y así continuó hasta que Ana Rodríguez estaba próxima a dar a luz.

"El día 30 de septiembre de 1932 Ana Rodríguez dió a luz al demandante Antonio Rodríguez en el Barrio Mameyes, de Utuado, en casa de su madre y ésta la atendió en el parto. El demandado fué a ver el niño unos días después de nacido y le dejó dinero para que atendiése sus gastos. También durante el período que Ana Rodríguez vivió en casa de su madre, mientras continuaba teniendo relaciones carnales con el demandado, éste sufragaba todos los gastos de la casa.

"Después de nacido el niño el demandado no se ocupó más de Ana Rodríguez ni de llevarle dinero para sus necesidades y ésta iba al pueblo de Manatí, todos los sábados, a casa de una amiga llamada Berta Molina y de allí mandaba a buscar al demandado, quién venía a verla y le daba dos o tres dólares todas las semanas. En estas visitas en casa de Berta Molina, Ana Rodríguez y el demandado no continuaron teniendo relaciones íntimas, limitándose dichas visitas a solicitar Ana Rodríguez ayuda para el niño y el demandado a darla en la extensión anteriormente indicada, y además el demandado hacía caricias al niño y manifestó allí que se le parecía a su hija.

"El demandado para esa época era Senador por el Distrito de Arecibo y entonces como ahora era propietario y agricultor.

"Ana Rodríguez con motivo de la poca ayuda económica que recibía del demandado dejó el niño en casa de su madre en el Barrio Mameyes, de Utuado, y vino a la ciudad de San Juan,

Puerto Rico, donde empezó a trabajar como doméstica de casas de familia y ganaba alrededor de $15 mensuales, con lo cual ayudaba a atender las necesidades de su hijo, hasta que finalmente alquiló una habitación en Santurce y se trajo a su madre y su hijo.

"Durante el período siguiente y hasta el año 1943 el demandado le daba ocasionalmente dinero a Ana Rodríguez para el niño a requerimiento de ésta, y otras veces le enviaba dinero por conducto de su hermano Rafael Ramos, y en el año 1943 el niño Antonio Rodríguez, el demandante, enfermó de cuidado y fué recluído en el Hospital Municipal de San Juan y luego, a gestiones de Rafael Ramos, hermano del demandado, el menor fué trasladado a la Clínica Maldonado, en Hato Rey, donde estuvo por espacio de un mes y el importe de los gastos y atención médica montantes a más de $200 fueron pagados por el demandado Juan Ramón Ramos.

"Desde que Ana Rodríguez vino a vivir a San Juan y se trajo a su madre y a su hijo el demandado no volvió a visitar a Ana Rodríguez ni al niño Antonio Rodríguez, el demandante, ni a ocuparse de ellos, excepto en las ocasiones anteriormente indicadas, siempre a requerimiento y gestión de Ana Rodríguez.

"Después de salir el niño Antonio Rodríguez de la Clínica Maldonado, Ana Rodríguez fué con su hijo, el demandante, Antonio Rodríguez, a Vega Baja, donde para entonces residía el demandado, y lo mandó a buscar, y al solicitar que reconociera el niño y que le siguiera ayudando económicamente el demandado le contestó que no podía reconocerlo porque él era casado y en cuanto a la solicitud de ayuda económica le contestó que si no se conformaba con los doscientos y pico de pesos que pagó en la Clínica.

"Desde el año 1943 hasta la fecha del juicio en junio de 1947 pasaron cuatro años durante los cuales Ana Rodríguez no recibió ayuda alguna del demandado para su hijo.

"En cuanto a la pensión alimenticia reclamada por el menor demandante quedó probado que el menor carece de recursos económicos para atender sus necesidades, excepto la escasa ayuda que recibe de su madre Ana Rodríguez, quien ganaba $15 mensuales trabajando de doméstica en una casa de familia y con esos $15 tenía que pagar habitación para su madre e hijo.

"El demandado Juan Ramón Ramos es agricultor según consta de la certificación expedida por el Tesorero de Puerto Rico (exhibit 1 y 2 del demandante), y era dueño a la fecha de la

vista de este caso en febrero 24 de 1948, en la municipalidad de Manatí, de siete fincas rústicas, con un total de 641.57 cuerdas, radicadas en distintos barrios de dicha municipalidad y valoradas para fines contributivos en $27,230. También era dueño de tres automóviles valorados para fines contributivos en un total de $3,900 y ganado y vehículos de labranzas, en las municipalidades de Manatí y Vega Baja, valorados en $2,940, o sea en total toda su propiedad, según dichas certificaciones, estaba valorada para fines contributivos en $34,070.

"Por toda esta propiedad anteriormente referida el demandado pagaba anualmente por concepto de contribuciones sobre la propiedad al Tesorero de Puerto Rico la suma de $825.02, y según las certificaciones aludidas, en febrero 24 de 1948 el demandado adeudaba al Tesorero solamente la anualidad correspondiente al año 1947-48.

"El demandado declaró que sus ingresos proceden de la agricultura, principalmente de la caña de azúcar, y que una de sus fincas de 322 cuerdas estaba pendiente de un pleito de reivindicación y que otra finca de 166 cuerdas estaba hipotecada al Royal Bank de Canada."

Inmediatamente hizo constar el tribunal a quo en sus conclusiones de derecho que "aun cuando en la demanda se titula la acción de 'alimentos' y en la súplica de la misma sólo se solicita sentencia en cuanto a los alimentos, sin embargo, de acuerdo con lo prescrito en la Regla 54(c) de Enjuiciamiento Civil el demandante tiene derecho a cualquier otro remedio que esté justificado por las alegaciones y la prueba;" que siendo el demandado casado para la fecha de la concepción del menor, era necesario considerar el caso dentro de las limitaciones establecidas por la sección 2 de la Ley núm. 229 de mayo 12 de 1942 ((1) pág. 1297, según fué enmendada por la núm. 243 de 12 de mayo de 1945 (pág. 815); que "habiéndose probado la paternidad el menor demandante tiene derecho a recibir alimentos de su padre, el demandado;" y que entendía "que lo anteriormente expresado, en cuanto al hecho de la paternidad y de las relaciones de querida de Ana Rodríguez con el demandado, unido a los actos del demandado y de su hermano Rafael en relación con el demandante, es sufi-

ciente para declarar al demandante hijo natural reconocido del demandado." En armonía con lo antes expuesto dictó sentencia declarando con lugar la demanda y "al demandante Antonio Rodríguez, hijo natural reconocido del demandado Juan Ramón Ramos Rodríguez, al solo efecto de llevar el apellido de su padre," condenando además a éste a pasar al demandante por vía de pensión alimenticia la suma de $40 mensuales.

No conforme con esa sentencia el demandado apeló. Ahora sostiene en sus dos primeros señalamientos de error que dicho tribunal erró "ál declarar al demandante hijo natural reconocido del demandado en una acción sumaria de alimentos no acumulada a una acción ordinaria de filiación sobre reconocimiento de hijo natural" y, asumiendo que pudiera hacer tal cosa, al resolver que la prueba era suficiente para establecer la filiación.

▆▆▆ Es incuestionable que el primer error señalado fué cometido. Si bien las acciones de filiación y alimentos son acumulables—*Vargas* v. *Jusino,* 71 D.P.R. 389, 395; *Acevedo* v. *Corte,* 70 D.P.R. 94, 95—ello no significa que cuando se inicia una acción al solo efecto de reclamar estos últimos pueda dictarse sentencia dentro del mismo pleito en relación con la filiación del menor reclamante. La acción de alimentos se rige por el procedimiento de desahucio. Artículo 84 de la ley referente a Procedimientos Legales Especiales, Estatutos Revisados de 1911, págs. 323, 337. Ése es un procedimiento sumario y las Reglas de Enjuiciamiento Civil no le son aplicables. Tampoco lo son, por ende, a la acción de alimentos. *Acevedo* v. *Corte,* supra; *Falcón* v. *Cruz,* 67 D.P.R. 530, 531. En su consecuencia, no debió hacerse referencia a dichas reglas. El tribunal tenía pleno conocimiento de cuál era la única acción que tenía ante sí, pues conforme hizo constar al iniciarse la vista del recurso en 9 de junio de 1947 "la cuestión se reduce a los alimentos de un hijo ilegítimo que no goza de la condición de reconocido, o de natural que puede ser reconocido." Las dos vistas requeridas por la ley fueron

celebradas conjuntamente y cuando el demandado entró a juicio es de presumirse que estaba preparado tan sólo para defenderse de la reclamación de alimentos que se le hacía. Nos damos cuenta, desde luego, que fué el laudable deseo del juzgador de hacer justicia substancial el que lo llevó en este caso a dictar una sentencia cuyo alcance excedía lo que se le había pedido. Empero, no importa cuán encomiable fuera su propósito, por las razones ya expuestas él no podía resolver la filiación del menor dentro de la acción de alimentos que era lo único que ante sí tenía.

No obstante, el error cometido no es uno que deba dar lugar a la revocación. La sentencia dictada cubre el aspecto relacionado con la reclamación de alimentos y en cuanto a ésta la misma, como veremos, puede ser sostenida. Dada la conclusión anterior, es innecesario discutir el segundo de los errores señalados.

El tercero es al efecto de que el tribunal inferior erró en la apreciación de la prueba. Hemos leído la transcripción de evidencia con todo cuidado y esa lectura nos ha convencido de que la misma justifica plenamente las conclusiones de hechos a que el tribunal inferior llegó en relación con los alimentos reclamados.

*La sentencia apelada será modificada en el sentido de excluir de la misma el pronunciamiento en que se declara al demandante hijo natural reconocido del demandado, y así modificada será confirmada.*