JOSÉ MANUEL DÍAZ, menor de edad, representado y asistido por su madre con patria potestad JUANITA DÍAZ TORRES, demandante y apelado, *v.* JOSÉ MANUEL HERNÁNDEZ, demandado y apelante.

Número 10790.

*Sometido:* 6 de noviembre de 1953. *Resuelto:* 8 de diciembre de 1953.

*E. Martínez Rivera*, abogado del apelante; *Manuel Torres Reyes,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

En una acción sobre reclamación de alimentos el anterior Tribunal de Distrito de Puerto Rico, Sección de Bayamón, dictó sentencia declarando que José Manuel Hernández es el padre del menor José Manuel Díaz y que como tal venía obligado a alimentarle, condenándole en su consecuencia a pasar al referido menor la suma de siete dólares ($7) semanales. No conforme con dicha sentencia apeló Hernández para ante este Tribunal imputándole a la corte sentenciadora la comisión de varios errores.

Por el primero de ellos se ataca la negativa de la corte a quo a oír al demandado en apoyo de su solicitud para que se le permitiera interrogar a Juanita Díaz, madre del menor demandante, antes del juicio. Tal señalamiento de error es frívolo. Admitiendo, argüendo, que el demandado apelante tenía derecho a ser oído en relación con esa solicitud, los autos revelan, que fué oído. La cuestión es sencilla. Antes del juicio, el demandado, amparándose en las Reglas 26 y 27 de las de Enjuiciamiento obtuvo del secretario de la corte a quo una citación dirigida a Juanita Díaz Torres para que compareciera ante el propio secretario en determinado día y hora a declarar sobre los hechos que se ventilaban en el pleito con el propósito de descubrir hechos que pudieran ser usados por el demandado como evidencia el día del juicio. Igual notificación se le sirvió al abogado del menor demandante. Entendiendo que las Reglas de Enjuiciamiento Civil no eran aplicables al procedimiento sumario seguido en el

caso, dicho abogado instruyó a la testigo Juanita Díaz Torres, y así lo notificó al demandante, para que no se sometiera al referido examen oral. Acudió entonces el demandante al tribunal sentenciador, en solicitud de una orden dirigida a la referida testigo para que se sometiera al examen interesado. La corte señaló fecha para la vista de esa solicitud, compareciendo ambas partes. Después que el demandado expuso la cuestión que estaba planteada, el tribunal entendió que tal examen oral antes del juicio era innecesario y haciendo uso de su discreción desestimó su solicitud.

No siendo de aplicación las Reglas de Enjuiciamiento Civil a la acción de alimentos tramitada mediante el procedimiento sumario de los juicios de desahucio, *Rodríguez* v. *Ramos*, 73 D.P.R. 6 y casos allí citados, la solicitud del demandado iba dirigida a la discreción del tribunal. En la vista oral el demandado manifestó que el fin que perseguía era el de descubrir hechos pertinentes a la materia en controversia. Es indudable además que en su moción el demandado debió alegar los fundamentos que tenía para obtener la orden interesada. Aunque dicha moción no ha sido elevada a este Tribunal, sin embargo, en su alegato el apelante la transcribe parcialmente apareciendo de la misma que dicha moción estaba fundada en que "para defenderse adecuadamente de la reclamación, 'necesita investigar y descubrir hechos pertinentes' mediante tal examen oral". La corte sentenciadora tuvo ante sí esa moción, al igual que la oposición a la misma radicada por el demandante. No puede pues quejarse el apelante de no haber sido oído. Por tanto, el primer error señalado no fué cometido.

■ Tampoco fué cometido el segundo. Por éste se imputa a la corte sentenciadora haber abusado de su discreción al negarse a ordenar el examen previo de la madre del demandante. Un cuidadoso estudio de los autos revela que el demandado tuvo amplia oportunidad de defenderse en esta acción y que efectivamente presentó toda la prueba con que

contaba para destruir el testimonio de la madre del demandante, que es el que en verdad sostiene la sentencia apelada. No hubo tal abuso de discreción.

 La transcripción de evidencia revela que cuando el demandado terminó de presentar su prueba informó a la corte que ése era su caso, agregando, "A mí me gustaría radicar un memorándum." A esto contestó el juez, "Aquí no hay ninguna cuestión de derecho; es una cuestión de hechos nada más. La corte va a dictar sentencia." Luego de lo cual procedió a dictar la sentencia que motiva este recurso. Se señala como tercer error la negativa de la corte a quo a permitirle al demandado la radicación de un memorándum. Sostiene el apelante que esta actuación de la corte sentenciadora envuelve una grave infracción al debido procedimiento de ley. No estamos conformes. Sin embargo es conveniente antes de entrar a discutir este error conocer las alegaciones de las partes, las cuestiones en controversia y la prueba presentada para dirimirla.

En la demanda se alega que Juanita Díaz Torres, madre del demandante, sostuvo relaciones maritales con el demandado José Manuel Hernández durante el curso del año 1950 y que como resultado de dichas relaciones nació el menor demandante José Manuel Díaz, en el pueblo de Comerío, el día 21 de mayo de 1951. La demanda contiene otras alegaciones sobre la capacidad económica del demandado que es innecesario reproducir ahora. En su contestación el demandado negó todos los hechos de la demanda y como defensa afirmativa alegó que nunca ha tenido relaciones amorosas o sexuales con Juanita Díaz Torres. Prácticamente la controversia quedó limitada al hecho de la paternidad. En cuanto a ella, la prueba del demandante consistió en el testimonio de su señora madre y en la admisión del resultado de un examen del tipo de sangre del demandado y del menor demandante. La del demandado consistió en su propio testimonio y en el de varios testigos. Esta prueba negaba que el demandado hubiera tenido relaciones sexuales con la madre

del demandante y además tendía a establecer que ésta paseaba con otros hombres, con uno de los cuales tuvo una vez contacto carnal.

En realidad, el caso se reducía a dirimir el conflicto en la prueba, como veremos más adelante, cuando analicemos la prueba del demandante a fin de determinar su suficiencia. La corte sentenciadora estimó que estaba en condiciones de dirimir el conflicto en la prueba y de aplicar la ley correspondiente sin la ayuda de memoranda. Al así actuar hizo uso de su discreción y a falta de una clara demostración de que se abusó de ella, su actuación no puede considerarse errónea.

Nuestro Código de Enjuiciamiento Civil no contiene disposición alguna que conceda a los litigantes el derecho absoluto de presentar alegatos en las cortes inferiores, como un incidente del juicio, ni el derecho a presentar argumentos o informes orales en cada caso. La necesidad de tales informes puede surgir de la naturaleza del caso y de la complejidad de las cuestiones en él envueltas. En California, donde al igual que en Puerto Rico, no existe precepto alguno concediendo el derecho a argumentar el caso, en acciones civiles juzgadas sin jurado, se ha resuelto repetidamente que la cuestión es una que descansa en la sana discreción del tribunal. *Dam* v. *Bond*, 251 Pac. 818. En el caso de *Larson* v. *Blue & White Cab Co.*, 75 P.2d, 612, se dice lo siguiente a la página 613:

"Al terminar el desfile de la prueba, la corte indicó que no deseaba oír argumento alguno sobre la cuestión de responsabilidad; que dentro del término de dos horas el abogado debía estar preparado con casos sobre la cuestión de daños solamente; que ella ya había concluído que el demandante tenía derecho a una sentencia contra los demandados. Éstos señalan la negativa de la corte a oír argumentos sobre la cuestión de responsabilidad como error. Cuando un caso es visto ante un juez y no ante un jurado, los abogados no tienen un derecho absoluto a argumentos. La cuestión de si éstos deben permitirse, o de ser permitidos, si deben restringirse, es una que cae dentro

de la discreción de la corte sentenciadora. (Citas). No se ha demostrado aquí abuso alguno de discreción."

Lo mismo ha sido resuelto en Wyoming, *Eldridge* v. *Rogers*, 275 Pac. 101, y en Oklahoma, *Barnes* v. *Benham et al.*, 75 Pac. 1130.

En el presente caso el demandado no solicitó oportunidad de presentar argumentos orales al terminar su caso sino que concretó su petición a la radicación de un memorándum. Ni siquiera se indicó al tribunal cuáles eran las cuestiones debatibles que ameritaban la presentación de memoranda. En tales circunstancias, no abusó de su discreción la corte al negar la solicitud del demandado.

■ El cuarto error carece de méritos. Mientras declaraba uno de los testigos del demandado, el Juez le hizo unas cuantas preguntas para determinar si estaba diciendo la verdad y al terminar el interrogatorio directo le informó al abogado del demandante que no le repreguntara porque ese testigo había dicho cosas increíbles. Aún de la propia transcripción de la evidencia, puede inferirse que el juez estuvo justificado en no creer a ese testigo, aparte de que dicho magistrado pudo observarlo mientras declaraba, y por tanto, estaba en mejores condiciones que nosotros para formar juicio sobre su veracidad.

■ Por el quinto señalamiento se le imputa a la corte a quo haber cometido error al tomar en consideración como elemento de prueba, el resultado de un análisis de clasificación de muestras de sangre del niño, de la madre de éste y del demandado.

El examen de los tipos de sangre fué hecho a petición del propio demandado. Durante el juicio el abogado de éste manifestó a la corte que tenía una tarjeta de los Laboratorios Ramis donde aparecía el resultado del examen, según el cual, José Manuel, el supuesto padre, pertenece al grupo A; el supuesto hijo pertenece también al mismo grupo A, y la madre al grupo O. Se admitió por las partes,

sin objeción, que ese era el resultado del examen para clasificar la sangre. El demandado se queja de que la corte sentenciadora tomara en consideración esos exámenes para determinar la paternidad. Sin embargo, la corte a quo manifestó al admitir esa evidencia, que el hecho de que' el niño y el supuesto padre pertenecieran al mismo grupo o tipo de sangre no significaba que el demandado fuera el padre del demandante. (¹)

Aceptando como correcta, la tesis del demandado, al efecto de que estas pruebas de sangre pueden excluir la paternidad

---

(¹) El incidente completo aparece así en el récord:

"La Corte: Vamos a oír la prueba. La demandante está aquí en corte y tiene la oportunidad su señoría de usarla como testigo o de represuntarla. Se le ha dado todas las oportunidades a este demandado. Ha habido suspensiones; se hizo el examen de sangre, que la corte lo ordenó a petición del propio demandado, en los Laboratorios Ramis; y ese examen dice que tienen el mismo tipo de sangre el supuesto padre y el supuesto hijo.

"Demandado: Pero ése es un elemento que la corte no debe y no puede tomar en consideración para determinar la paternidad.

"La Corte: Ésa es una cosa que el propio demandado pidió y la corte tiene que tomarlo en 'consideración. Se hizo el examen de sangre y el niño tiene el mismo tipo de sangre que el supuesto padre.

"Demandado: Eso no quiere decir que él sea el padre.

"La Corte: Exactamente. Eso no quiere decir que él sea el padre. Eso solo así aislado no es prueba; si no hay más prueba que corrobore el examen de sangre, o si la prueba que se presente es insuficiente o increíble por la corte, se desestimará la demanda y si la prueba que el demandado presente convence al tribunal que él no es el padre, se declarará sin lugar la demanda.

"Yo voy a oír toda la prueba y resolveré el caso a favor de quien tenga la razón. Adelante."

Y a las páginas 17 y 18 de la transcripción aparece lo siguiente:

"La Corte: ¿En dónde está el informe del Doctor Ramis?

"Demandante: Debe estar ahí en el expediente.

"La Corte: Yo tengo la idea de haberlo leído.

"Demandado: Yo tengo una tarjeta del resultado del examen de los Laboratorios Ramis, de los tres análisis; y aparece que José Manuel, el supuesto padre, pertenece al grupo A; y el supuesto hijo pertenece al grupo A; y la sangre de ella, corresponde al grupo O.

"Demandante: Que se haga constar en el récord.

"La Corte: ¿Entonces se admite que eso que leyó ahí el compañero es el resultado del examen para clasificar la sangre?

"Demandado: Sí, señor Juez."

pero nunca podría probarla, —Véase el artículo del Dr. Unger publicado en el tomo 152, núm. 11, página 1006, de "The Journal of the American Medical Association" —en el presente caso, según veremos más adelante, el juez sentenciador tuvo ante sí prueba suficiente, independientemente de la prueba sobre los tipos de sangre, para establecer el hecho de la paternidad. No se cometió pues, el error imputado bajo este señalamiento.

 Por los errores seis y siete se ataca la suficiencia de la prueba. Arguye el demandado que el testimonio de la madre del niño no proporciona una base razonablemente cierta para concluir que él sea el padre de dicho niño. Cita en apoyo de su contención un artículo publicado por el Dr. H. L. Stewart en el tomo 149, núm. 13, página 1083 de "The Journal of the American Medical Association", donde el autor sostiene que debe asumirse a base de ciertos estudios realizados que el período máximo de duración del embarazo, a partir de la celebración del coito, es de 285 días. Sin embargo, el propio autor en el mismo artículo, tratando la cuestión desde un punto de vista médico-legal, admite que "Las decisiones que establecen la paternidad dentro de un período de 300 días contados a partir del último coito son razonables, empero términos más largos son muy cuestionables y se hacen conspicuos por la ausencia absoluta en este estudio de datos que lo sostengan." Ahora bien, el niño cuya paternidad se disputa, nació el día 21 de mayo del año 1951. La madre de dicho niño declaró que ella tuvo relaciones carnales con el demandado por primera vez, siendo virgen, en el mes de julio de 1950; que una semana después volvieron a tener contacto carnal y que luego, volvieron a tener relaciones sexuales por tercera y última vez.

Aunque la prueba no establece la fecha exacta en que realizaron el último coito, hay base en la misma para inferir que fué durante los últimos días del mes de julio o los primeros de agosto de 1950. Un ligero cálculo aritmético

indicaría que desde estas fechas hasta el 21 de mayo de 1951 hay menos de 300 días, y que conforme a la propia autoridad citada por el demandado, no es irrazonable concluir, como lo hizo la corte a quo, que la paternidad quedó establecida. No podemos, por tanto, convenir con el apelante en que la sentencia no esté sostenida por la prueba.

*No habiéndose cometido los errores señalados, la sentencia apelada será confirmada.*

El Juez Asociado Sr. Belaval concurre con los resultados.