LUIS ANTONIO COSME, demandante y recurrido, *v.* MERCEDES MARCHAND, demandada y recurrente.

*Número:* RE-86-316 *Resuelto:* 5 de mayo de 1988

226

*Arturo Nieves Huertas,* abogado de la recurrente; *Sarah Torres Peralta,* abogada del recurrido.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Este caso nos brinda la oportunidad de resolver la interrogante que dejamos sin contestar en *Cabrer v. Pietri,* 67 D.P.R. 437, 439–440 (1947): "si un esposo tiene derecho al divorcio por la causal de separación si no ha tenido relaciones sexuales con su esposa por más de tres años, pero ha

continuado viviendo en la misma casa con ella durante dicho período." Art. 96(9) del Código Civil.(1)

Luis Antonio Cosme y Mercedes Marchand contrajeron nupcias el 12 de mayo de 1975. No procrearon hijos. El 9 de septiembre de 1985 el señor Cosme presentó demanda de divorcio por la causal de separación contra la recurrente señora Marchand. Alegó que se había ido "del hogar ha[cía] alrededor de nueve meses; y desde antes de esa fecha, mientras ambos vivían en el mismo hogar, estaban separados físicamente". Relación de hechos, pág. 2. La demandada recurrente contestó negando la alegada separación y expresó que la situación por la cual atravesaba al matrimonio era atribuible a la conducta, tanto pública como privada, observada por el demandante recurrido. El 29 de noviembre de 1985, la demandada recurrente enmendó su contestación para adicionar una reconvención fundada en la causal de trato cruel. Reclamó, además, la suma de tres mil dólares ($3,000) mensuales por concepto de pensión alimenticia.(2)

Luego de celebrar varias vistas y recibir el testimonio de testigos, el 16 de mayo de 1986 el tribunal de instancia dictó sentencia en la que decretó el divorcio por la causal de separación. Concedió a la recurrente la suma de mil dólares ($1,000) mensuales por concepto de alimentos *pendente lite*(3) por los meses de diciembre de 1985 a mayo de 1986 y condenó al demandado recurrido al pago de mil quinientos

---

(1) 31 L.P.R.A. sec. 321(9).

(2) El 3 de diciembre de 1985 presentó una solicitud de alimentos *pendente lite* por la suma reclamada en la demanda y solicitó la imposición de honorarios de abogado. El demandante recurrido compareció y se opuso a ambas solicitudes.

(3) La vista del caso en su fondo se celebró junto con la vista de la solicitud de remedios provisionales de la demandada recurrente. No fue hasta que recayó sentencia que el tribunal concedió los mismos.

dólares ($1,500) por concepto de honorarios de abogado por temeridad.(4)

No conforme con la sentencia, la demandada recurrente presentó ante este Tribunal recurso de revisión. Decidimos revisar y expedimos el auto. Señaló la comisión de seis (6) errores. Los primeros cuatro (4) errores van dirigidos a atacar la determinación del foro de instancia, de que bajo la situación de hechos del caso de autos se estableció la causal de separación y que no se probó la causal de trato cruel alegada en la reconvención. Por la conclusión a que llegamos no es necesario que discutamos los dos (2) errores restantes.(5)

Debemos resolver si, bajo las circunstancias del presente caso, se configuró la causal de separación.

I

*Los hechos*

La prueba desfilada, a la cual le dió crédito el foro de instancia, demostró que aunque las partes no habían tenido relaciones sexuales desde hacía alrededor de dos años y medio(6) antes de presentar la demanda, siguieron llevando una vida matrimonial normal en otros aspectos. Durante todo el tiempo de la alegada separación, las partes se mantuvieron viviendo bajo el mismo techo en un inmueble propiedad de la sociedad de gananciales compuesta por ambos. No fue hasta

---

(4) La demandada recurrente presentó una moción al amparo de la Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, para que el tribunal hiciera determinaciones de hecho y conclusiones de derecho adicionales. La misma fue denegada.

(5) En el quinto y sexto señalamiento alegó que el tribunal de instancia erró al reunirse con las partes litigantes en ausencia de sus respectivos representantes legales y continuar presidiendo los procedimientos sobre la objeción de la parte demandada, e imponer a la parte demandada el pago de honorarios de abogado por temeridad.

(6) La demandada recurrente negó esta alegación y por su parte alegó que sí habían tenido relaciones íntimas dentro de los dos (2) años anteriores a la presentación de la demanda de divorcio.

el 20 de marzo de 1985 que el demandante recurrido abandonó el hogar. Éste declaró: "[n]o me fui antes del hogar porque soy hogareño. Quería mantener el matrimonio. . . . Estuve sin mantener relaciones·sexuales tres años. No se lo dije a nadie. Ahora a usted. Nada me retenía en la casa. No había impedimentos para irme. Permanecía voluntariamente." (Énfasis suprimido.) Alegato de la recurrente, págs. 4 y 6. Sobre la relación que llevaba con la demandada recurrente durante el tiempo que vivieron juntos antes de la presentación de la demanda de divorcio, expresó que: "[é]ramos un matrimonio. Todavía lo somos excepto en cuanto a las relaciones sexuales. . . . Celebrábamos actividades sociales en casa, con mucha separación, hasta el 20 de mayo de 1985. Iban distintas personas. Las fiestas grandes eran en navidad. Otras eran pequeñas. Una o dos veces por mes. Compartíamos con los invitados." Alegato de la recurrente, pág. 5.

Hasta el momento en que el demandante recurrido abandonó el hogar, las partes compartían los gastos de la residencia y era la demandada recurrente la que se encargaba de las cuentas. Ambos trabajaban juntos en un programa de televisión.[7]

También desfiló prueba de que en julio de 1984 las partes viajaron a Europa. Estuvieron diecisiete (17) días en las ciudades de Roma, Venecia y Florencia. Durante el viaje fueron juntos a cenar, a recorrer los monumentos históricos y culturales, y a la ópera.

La parte demandada recurrente presentó en evidencia varias fotografías tomadas en diversas fechas y lugares en las cuales aparecen las partes disfrutando y compartiendo en distintas actividades sociales. Al interrogársele sobre estas fotografías el demandante recurrido se limitó a manifestar

---

[7] La demandada recurrente renunció el mismo día antes de la vista del caso de divorcio.

que estaba fingiendo, ya que en su profesión su imagen es muy importante y, además, que él siempre sonríe en las fotografías. Alegato de la recurrente, pág. 8.

Luego de escuchar esta y otra prueba similar, el tribunal de instancia declaró con lugar la demanda y decretó el divorcio entre las partes por la causal de separación. Estimó que "la prueba respecto a la causal de divorcio demostró que las partes están separadas físicamente, primero dentro del hogar, y luego fuera del hogar, desde antes del mes de enero de 1983 hasta el presente. Dicha separación fue continua e ininterrumpida durante todo ese período. Un viaje realizado a Italia por el matrimonio, en el curso del cual las partes no llevaron a efecto relaciones íntimas, no tuvo efecto interruptor alguno del término de separación". Apéndice, pág. 13. Nada se dispuso en la sentencia sobre la reconvención. Más tarde, sin embargo, al resolver una moción de la demandada recurrente sobre determinaciones de hecho adicionales, Regla 43.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, el tribunal indicó específicamente que no le había dado crédito a la prueba aportada sobre la causal de trato cruel.[8]

## II

### El Matrimonio

■ El Código Civil de Puerto Rico, ed. 1930, en su Art. 68 (31 L.P.R.A sec. 221), define la institución del matrimonio así:

El matrimonio es una institución civil que procede de un contrato civil en virtud del cual un hombre y una mujer se obligan mutuamente a ser esposo y esposa, y a cumplir el uno

---

[8] En cuanto a este señalamiento de error, en ausencia de perjuicio, parcialidad o error manifiesto, no intervendremos con la determinación del tribunal de instancia. *Figueroa v. A.R. Co.*, 64 D.P.R. 335 (1944); *Díaz v. Hernández*, 75 D.P.R. 514 (1953); *Román Montalvo v. Delgado Herrera*, 89 D.P.R. 428 (1963).

para con el otro los deberes que la ley les impone. Será válido solamente cuando se celebre y solemnice con arreglo a las prescripciones de aquélla, y sólo podrá disolverse antes de la muerte de cualquiera de los dos cónyuges, *en los casos expresamente previstos en este título.* (Énfasis suplido.)

■ El matrimonio es la unión legal de un hombre y una mujer para crear una plena comunidad de existencia. Es la base de la familia y de la vida social y, por tanto, constituye el eje central de nuestra sociedad; una institución fundamental. *Morales v. Vélez,* 75 D.P.R. 960 (1954); J.M. Manresa y Navarro, *Comentarios al Código Civil Español,* 7ma ed. rev., Madrid, Ed. Reus, 1956, T. I, pág. 395; L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil,* 3ra ed. rev., Madrid, Ed. Tecnos, 1983, Vol. IV, pág. 65. Véanse, también: J. Castán Tobeñas, *Derecho Civil Español,* 10ma ed. rev., Madrid, Ed. Reus, 1983, T. 5, Vol. 1, pág. 112 *et seq.*; M. Albaladejo, *Curso de Derecho Civil,* Barcelona, Ed. Bosch, 1982, T. IV, pág. 32; D. Espín Cánovas, *Manual de Derecho Civil Español,* 8va ed. rev., Madrid, Ed. Rev. Der. Priv., 1975, Vol. IV, pág. 16 *et seq.*

La doctrina escolástica sobre los fines del matrimonio diseñó una fórmula bilateral para definirlo. Sobre el particular, Castán nos dice: "La doctrina bilateral de los fines del matrimonio es tan antigua, tan clásica, que ya la expuso con toda claridad Aristóteles. 'La aproximación de los sexos en los animales —decía— no tiene otro alcance que la procreación. Por el contrario, la asociación de los sexos en la especie humana no sólo va encaminada á tener hijos, *sino también á sostener todas las demás relaciones de la vida . . .'.*" (Énfasis suplido.) J. Castán Tobeñas, *La Crisis del Matrimonio,* Madrid, Ed. Hijos de Reus, 1914, pág. 68.

■ El matrimonio como institución se funda en el consentimiento voluntario de los contrayentes, llevado a cabo en acto solemne, ajustado a los requisitos y formalidades pres-

critas por la ley. J. Puig Brutau, *Fundamentos del Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1985, T. IV, pág. 13; Arts. 69–87 del Código Civil, 31 L.P.R.A. secs. 231–265. El Código Civil establece los derechos y obligaciones que emanan del vínculo matrimonial, Arts. 88–90 (31 L.P.R.A. secs. 281–283), y reglamenta su disolución enumerando las causales de divorcio y disponiendo el procedimiento a seguirse. Arts. 95–97 del Código Civil, 31 L.P.R.A. secs. 301, 321 y 331. Entre los derechos y obligaciones de los cónyuges se encuentran el vivir juntos, guardarse fidelidad, ayudarse mutuamente y actuar en interés de la familia. Todos estos deberes gozan de igual rango y jerarquía, ya que ninguno se considera de mayor importancia o relevancia. Es la observancia de todos ellos lo que infunde vida a la unión matrimonial y facilita la consecución de los fines de la importante institución del matrimonio. "El matrimonio se dirige . . . [hacia] tres fines sustanciales: primero, procreación y perfección de la especie; *segundo, mutuo auxilio; y tercero, mejor cumplimiento de los fines de la vida. Adviértase que no es precisa la concurrencia de los tres fines, y que basta la existencia de cualquiera de ellos para legitimar el matrimonio*, lo cual justifica el que pueda contraerse por personas que no tienen ya edad para procrear y que ni siquiera se proponen auxiliarse, pero que, mediante el matrimonio, desean cumplir otros fines de la vida. . . ." (Énfasis suplido.) L. Fernández Clérigo, *El derecho de familia en la legislación comparada*, México, Ed. Unión Tipográfica Editorial Hispano-Americana, 1947, pág. 8.

### III

*La disolución del matrimonio por la causal de separación*

■ El Art. 96(9) del Código Civil, *supra*, dispone que será causal de divorcio:

(9) La separación de ambos cónyuges por un período de tiempo sin interrupción de más de dos (2) años; Disponiéndose

234

que, probado satisfactoriamente la separación por el expresado tiempo de más de dos (2) años, al dictarse sentencia no se considerará a ninguno de los cónyuges inocente ni culpable. Para los efectos de la sec. 2411 de este título, se considerarán ambos cónyuges como inocentes.

Por la importancia que tiene para el Estado la institución del matrimonio, se ha establecido como política pública que, una vez contraído el matrimonio, éste sólo puede ser disuelto de la manera y en los casos específicos reconocidos por la legislación o la jurisprudencia sobre la materia.[9] El Art. 95 del Código Civil, 31 L.P.R.A. sec. 301, nos dice que el vínculo del matrimonio se disuelve por la muerte de uno de los cónyuges, por el divorcio legalmente obtenido o si el matrimonio se declarase nulo. El Art. 96 del Código Civil, *supra*, enumera las causales de divorcio, entre las que se encuentra la que nos ocupa en el presente caso: la causal de separación. Esta causal de divorcio se incorporó al Art. 96 del Código Civil, *supra*, en 1933 por medio de la Sec. 1 de la Ley Núm. 46 de 9 de mayo de 1933.[10] Se adicionó para facilitar el que los matrimonios cuyos cónyuges hubiesen estado separados ininterrumpidamente por el período establecido por ley, pudieran disolver el vínculo matrimonial sin tener que indagar cuál de ellos era el culpable. *Pérez Valdivieso v. León*, 52 D.P.R. 512 (1938); *Núñez v. López*, 62 D.P.R. 567 (1943).

Al interpretar la causal de separación como fundamento para el divorcio, hemos dicho que el elemento esencial que hay que considerar es si marido y mujer han vivido separados, el uno del otro, por el término prescrito por ley. *Pérez*

---

[9] En *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978), reconocimos el consentimiento mutuo como causal de divorcio fundado en el derecho a la intimidad.

[10] Originalmente se exigía un período de separación de siete (7) años, luego en 1942 se enmendó el Art. 96 del Código Civil, 31 L.P.R.A. sec. 321, para reducirlo a tres (3) años, y en el presente se requiere una separación de dos (2) años.

*Valdivieso v. León*, supra; *Simonet v. Sandoval*, 63 D.P.R. 523 (1944); *Miranda v. Padró*, 66 D.P.R. 130 (1946); *Godreau v. Guerrero*, 68 D.P.R. 88 (1948). Nuestra doctrina requiere, para que exista la causal de separación, que uno de los cónyuges *viva separado del otro con esa intención específica. Godreau v. Guerrero*, supra, pág. 90.

Para que se configure la separación que dispone el Código Civil, 31 L.P.R.A. sec. 321(9), como causal de divorcio, es indispensable que estemos ante el cese efectivo de la convivencia conyugal, ya que sólo así podría alegarse la ruptura de la comunidad de vida conyugal del matrimonio. "[L]a separación [para que] sea efectiva . . . [tiene que ser] real y seria, externa y continuada . . . [l]a separación efectiva tiene que ser resultado y exteriorización de la ruptura conyugal, lo que requiere que sea material (ruptura de la cohabitación) y espiritual (decadencia del *amor conjugalis*), presumiéndose que ésta existe cuando hay ruptura material." M. López Alarcón, *El Nuevo Sistema Matrimonial Español*, Madrid, Ed. Tecnos, 1983, págs. 200–201. Véanse, también: E. Fosar Benlloch, *Estudios de Derecho de Familia*, Barcelona, Ed. Bosch, 1986, T. II, Vol. I; J.L. La Cruz Berdejo, *El nuevo régimen de la familia*, Madrid, Ed. Civitas, 1982, págs. 192–197.

Es necesario que los cónyuges cesen su vida conyugal con la intención de interrumpir la vida en común. Según Puig Brutau: "Ha de tenerse en cuenta que el simple alejamiento físico de los cónyuges no implica el efectivo cese de la convivencia conyugal, sino que es necesario que se realice con intención de interrumpir la vida en común." Puig Brutau, *op. cit.*, pág. 60.

Según Zanón Masdeu, por el concepto *separación matrimonial* se entiende:

[L]a conclusión de la vida en común de los cónyuges, por acuerdo unilateral o bilateral de los mismos, con carácter per-

petuo o temporal y sin que haya intervenido la autoridad judicial.

De la dicha definición, sacamos como consecuencia inmediata, que la separación de hecho presume los siguientes elementos:

1º. Uno objetivo, la no cohabitación entre los cónyuges.

2º. Otro subjetivo, el *animus*, o intención unilateral o bilateral, de los cónyuges de dar por conclusa la vida en común y por consiguiente, por rota. toda relación matrimonial. L. Zanón Masdeu, *La separación matrimonial de hecho*, Barcelona, Ed. Hispano Europea, 1974, pág. 22.

 La institución del matrimonio es mucho más que la legalización del acto sexual entre los cónyuges. El propósito del Estado va mucho más allá de la reglamentación de uniones sexuales. Castán Tobeñas, *La Crisis del Matrimonio, op. cit.*, págs. 63–64. El matrimonio es "la unión legal de un hombre y una mujer *para la plena y perpetua comunidad de existencia*". (Énfasis suplido.) Manresa y Navarro, *op. cit.*, pág. 395. Esta plena comunidad de existencia se compone de varios elementos y factores tales como compañía, cuido, amistad, cohabitación y procreación, entre otros. La causal de separación que dispone nuestro Código Civil se configura sólo cuando las partes deciden vivir separados con esa intención. La separación ha de ser pública y notoria.[11]

 Tomando en consideración estas normas y principios de derecho, analicemos los hechos en el caso de autos. Durante los dos (2) años inmediatamente antes de presentar la demanda de divorcio, las partes no estuvieron viviendo separadas, ya que por el contrario convivían bajo el mismo techo y públicamente hacían vida matrimonial. La prueba reflejó que faltaba el requisito de la intención de separarse.

---

[11] Cuando "bajo un mismo techo se descontinúan las relaciones sexuales, de concederse el divorcio, se prescindiría de por lo menos uno de los requisitos que suelen exigir las cortes. La separación no sería pública y notoria . . .". H.R. Cancio, *Jurisprudencia*, 17 Rev. Jur. U.P.R. 193 (1974).

El propio demandante recurrido en el contrainterrogatorio declaró que no se fue antes del hogar porque quería mantener el matrimonio; que se quedó viviendo en la misma casa con la demandada recurrente "a ver qu[é] pasaba . . .". Alegato de la recurrente, pág. 6. El demandante recurrido no estableció la existencia de una separación que satisfaga los criterios necesarios para que la misma sea constitutiva de la causal de divorcio por separación que dispone nuestro Código Civil. En *Morales v. Vélez*, 75 D.P.R. 960, 967 (1954), dijimos que "[e]l matrimonio puede disolverse por una de las causas que prescribe el Código Civil. *El estado no obliga a nadie a vivir maritalmente si existe motivo legal para el divorcio, pero si se solicita ese remedio, el que lo pretenda, está en el deber de probar la causal que invoque*, con evidencia, que de ser creída por el juzgador, tenga el efecto legal de establecerla. Con ese deber no cumplió el demandante en el caso de autos, y somos de opinión que resolver lo contrario equivaldría a desnaturalizar la causal invocada por él". (Énfasis suplido.) Lo mismo ocurre en el caso de autos. La evidencia presentada por el demandante recurrido fue insuficiente para probar la causal de separación y conceder el divorcio. Bajo estas circunstancias tendría el efecto de desvirtuar y desnaturalizar la causal de separación invocada por el demandante recurrido.

Bajo el derecho anglosajón también se ha llegado a resultados similares. Véanse: *Dudley v. Dudley*, 33 S.E.2d 489, 491 (1945); *Young v. Young*, 34 S.E.2d 154 (1945); *McNary v. McNary*, 111 P.2d 760 (Wash. 1941); *DeRienzo v. DeRienzo*, 290 A.2d 742 (N.J. 1972); *Ellam v. Ellam*, 333 A.2d 577 (N.J. 1975); *Camp v. Camp*, 331 S.E.2d 166 (1985).[12]

---

[12] En *Dudley v. Dudley*, 33 S.E.2d 489, 491 (1945), el tribunal expresó lo siguiente:

■ Resolvemos, pues, que la mera ausencia de relaciones sexuales en un matrimonio, cuando las partes continúan viviendo juntos y funcionando como un matrimonio en otros aspectos, no puede invocarse como único fundamento para alegar la existencia de la causal de divorcio por separación.

Por los fundamentos antes expuestos, *se dictará sentencia que revoque la dictada por el Tribunal Superior, Sala de San Juan, de fecha 16 de mayo de 1986.*

El Juez Asociado Señor Ortiz no intervino.

---

"There is no evidence on this record showing a cessation of cohabitation between the plaintiff and defendant in the usually accepted sense, except as to their sexual relations. . . .

"The discontinuance of sexual relations is not in itself a living 'separate and apart' within the meaning of some statutes, and a divorce will be denied where it appears that during the period relied upon the parties had lived in the same house. It has been said that what the law makes a ground for divorce is the living separately and apart of the husband and wife continuously for a certain number of years. This separation implies something more than a discontinuance of sexual relations, whether the discontinuance is occasioned by the refusal of the wife to continue them or not. It implies the living apart for such period in such a manner that those in the neighborhood may see that the husband and wife are not living together."

A esos mismos efectos, en *Young v. Young,* 34 S.E.2d 154, 157 (1945), se dijo que: "[s]eparation means cessation of cohabitation, and cohabitation means living together as man and wife, though not necessarily implying sexual relations. Cohabitation includes other marital responsabilities and duties."