FRANCISCO REBOLLO LÓPEZ, demandante y recurrido, *v.* YVONNE GIL BONAR, demandada y peticionaria.

*Número:* CC-97-628          *Resuelto:* 21 de noviembre de 1997

*Nora Rodríguez Matías*, abogada de la parte peticionaria; *Beatriz Vázquez de Acarón*, abogada de la parte recurrida.

## RESOLUCIÓN

Examinadas detenidamente la moción en auxilio de jurisdicción de este Tribunal y la solicitud de *certiorari,* que fueron presentadas por la peticionaria en el caso de epígrafe, *no ha lugar.*

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.

El Juez Asociado Señor Rebollo López se inhibió. Los demás Jueces del Tribunal participaron por la regla de necesidad.

La Juez Asociada Señora Naveira de Rodón emitió un voto particular de concurrencia, al cual se unieron el Juez Asociado Señor Fuster Berlingeri y el Juez Asociado Señor Corrada Del Río.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— O —

Voto particular de concurrencia emitido por la Juez Asociada Señora Naveira de Rodón, al cual se unen los Jueces Asociados Señores Fuster Berlingeri y Corrada Del Río.

En este caso, tanto el demandante recurrido Sr. Francisco Rebollo López como la demandada peticionaria Sra. Yvonne Gil Bonar se quieren divorciar y así lo han solicitado al tribunal. Únicamente difieren en cuanto a la causal que alegan tener. El señor Rebollo López aduce la causal de separación, Art. 96(9) del Código Civil, 31 L.P.R.A. sec. 321(9), mientras que la señora Gil Bonar alega la de trato cruel, Art. 96(4) del Código Civil, 31 L.P.R.A. sec. 321(4).

A continuación haremos una breve exposición de los hechos pertinentes. De la prueba creída por el tribunal de instancia surge que ya desde fines de 1994 los esposos Rebollo-Gil habían estado experimentando problemas en su matrimonio, los cuales culminaron en la separación física de mesa y tálamo dentro del hogar. El 21 de febrero de 1995 el señor Rebollo López se fue de la residencia conyugal. Durante todo este tiempo la pareja intentó sin éxito solucionar sus problemas matrimoniales. Según surge de una carta enviada el 3 de julio de 1995 por el señor Rebollo López a la señora Gil Bonar, desde la separación física en febrero de ese año hasta el 2 de julio siguiente, él continuó sus esfuerzos por reconciliarse. A esos efectos, hizo varios acercamientos a la señora Gil Bonar. Ésta, aunque no rechazó la posibilidad de una reconciliación, insistió en que para lograr esta meta era necesario

que "él hablara la verdad, [que] habían [sic] muchas cosas que explicar". En dicha carta el demandante recurrido señor Rebollo López expresó que de una conversación telefónica que sostuviera con la demandada peticionaria señora Gil Bonar, el domingo 2 de julio de 1995, "resulta[ba] dolorosamente claro para [él] que las gestiones que [venía] realizando para lograr la reconciliación estaban [llamadas a fracasar] y que no de[bió] haber llevado a cabo las mismas; esto es, el divorcio resultaba, y resulta, ser el único camino a seguir por nosotros". Más adelante hizo mención al hecho de que ambos coincidían en la determinación de divorciarse.

El 4 de noviembre de 1996 el señor Rebollo López presentó una demanda de divorcio por la causal de separación y, diecisiete (17) días más tarde, la señora Gil Bonar presentó otra demanda de divorcio, en la que alegó la causal de trato cruel. En su demanda, ella afirmó que la relación matrimonial entre los dos (2) se había deteriorado a tal extremo que ya no se cumplían los fines legítimos para los cuales un hombre y una mujer unen sus vidas en matrimonio.

El Tribunal de Primera Instancia consolidó los casos y luego de una serie de trámites procesales decidió ventilar la causal de separación antes que la de trato cruel. El 19 de junio de 1997 se celebró la vista en su fondo y el 30 de junio el tribunal dictó sentencia para decretar el divorcio por la causal de separación y desestimar la acción de la demandada peticionaria, señora Gil Bonar, por la causal de trato cruel. La sentencia se notificó el 3 de julio de 1997. El foro de instancia determinó que el periodo estatutario de dos (2) años para la causal de separación comenzó desde finales de octubre, o principios de noviembre, cuando la pareja se separó de mesa y tálamo dentro del hogar conyugal. Entendió que la situación en este caso era distinguible de la resuelta en *Cosme v. Marchand*, 121 D.P.R. 225 (1988). Expresó, además, que era "un hecho incuestionable que para la fecha de la vista del caso, las partes llevaban separados en exceso de dos años, en vista de que [el señor Re-

bollo López] abandonó el hogar conyugal el 21 de febrero de 1995". Tomando esto en consideración, concluyó que "de todos modos, la causal de separación se había perfeccionado al momento de la celebración de la vista en su fondo".

Inconforme con lo resuelto por el foro de instancia, la demandada peticionaria, señora Gil Bonar, apeló ante el Tribunal de Circuito de Apelaciones (en adelante el Tribunal de Circuito). Mediante sentencia dictada y notificada el 3 de octubre de 1997, dicho foro confirmó el dictamen de instancia. Éste coincidió con la interpretación respecto al momento en que comenzó el término de dos (2) años para la causal de separación. Entendió, además, que independientemente de que a la fecha de la presentación de la demanda por separación no se hubiese cumplido el término estatutario de dos (2) años, "de todos modos el transcurso de un plazo mayor de dos años entre la fecha en que ocurrió la separación de techo —21 de febrero de [1995]— y la fecha en que se celebró el juicio —19 de junio de 1997— constituye un fundamento adicional e independiente [para] confirma[r] la sentencia apelada".

Inconforme con la sentencia, la señora Gil Bonar presentó ante nos un recurso de *certiorari*. En éste cuestiona la determinación del tribunal de instancia al efecto de incluir aquellos meses durante los cuales las partes convivieron bajo el mismo techo a los fines de decretar el divorcio por la causal de separación por un periodo ininterrumpido de dos (2) años. También cuestiona que se computase este término desde la fecha cuando el demandante recurrido señor Rebollo López se fue del hogar conyugal, el 21 de febrero de 1995.(1) La peticionaria expresó que sólo hay dos (2) fechas desde las cuales se puede computar el término de dos (2) años provisto en la ley para que se configure la

---

(1) La demandada peticionaria cuestionó, además, la apreciación de la prueba hecha por el foro de instancia y avalada por el Tribunal de Circuito de Apelaciones (en adelante el Tribunal de Circuito). Alegó también que la sentencia del foro de instancia violó sus derechos constitucionales a la intimidad, al debido proceso de ley y a recibir igual trato según la ley. Por la conclusión a la cual llegamos no será necesario discutir estos dos (2) señalamientos de error.

causal de separación: el 21 de febrero de 1995, fecha cuando el demandante recurrido señor Rebollo López se fue del hogar conyugal y el 3 de julio de 1995,([2]) cuando haciendo referencia a conversaciones previas, específicamente la sostenida el día antes, 2 de julio, le comunicó por escrito a la demandada peticionaria señora Gil Bonar su impresión de que la reconciliación no era posible y que, por lo tanto, el divorcio resultaba el único camino posible para ambos. De los hechos antes reseñados, surge una tercera posible fecha para el cómputo del término de dos (2) años de separación, la de 2 de julio de 1995.

Tomando la fecha menos favorable para el demandante recurrido señor Rebollo López, la de 3 de julio de 1995, encontramos que para la fecha cuando se celebró la vista en su fondo, el 19 de junio de 1997, y la fecha en que se dictó la sentencia, once (11) días más tarde, el 30 de junio, el término de dos (2) años de separación aún no había transcurrido. Sin embargo, para la fecha cuando la sentencia se notificó y advino final, el 3 de julio de 1997, el término de dos (2) años ya se había cumplido. Esto se debe a que, por lo menos desde el 2 de julio de 1995, existía ya una separación con intención de divorciarse y que, por ende, el 2 de julio de 1997, un día antes de notificarse la sentencia y de que ésta adviniese final, ya la causal de divorcio por separación existía.([3])

De todo lo antes expuesto surge con meridiana claridad que al momento en que el demandante recurrido presentó la demanda de divorcio por la causal de separación, aún no existía dicha causal. Entendemos que los hechos del caso reflejan que uno de los elementos esenciales para que se configure dicha causal aún no existía. El elemento subje-

---

([2]) Esta es la fecha cuando la demandada peticionaria señora Gil Bonar estima que se inició la separación para propósitos del cómputo del término estatutario.

([3]) No estamos de acuerdo con la peticionaria en que esta situación es igual a la que surgió en *Cosme v. Marchand*, 121 D.P.R. 225 (1988). En el caso citado al advenir final la sentencia dictada por el foro de instancia sólo había transcurrido un (1) año y cuatro (4) meses desde la separación. El término estatutario de dos (2) años provisto para la causal de separación se cumplió estando pendiente el recurso de revisión ante el Tribunal Supremo.

tivo de la intención o *animus* unilateral o bilateral, de dar por concluida definitivamente la relación matrimonial, no había surgido. Según lo expresara el comentarista Zanón Masdeu, la intención a que se refiere la causal de separación es aquélla de uno o ambos cónyuges "de dar por conclusa la vida en común y por consiguiente, por rota toda relación matrimonial". L. Zanón Masdeu, *La separación matrimonial de hecho*, Barcelona, Ed. Hispano-Europea, 1974, pág. 22. Véanse, además: *Cosme v. Marchand*, supra, págs. 234–235, y *Godreau v. Guerrero*, 68 D.P.R. 88, 90 (1948). En el caso de autos, aunque las gestiones de reconciliación no rindieron el fruto deseado, por lo menos hasta el 2 de julio de 1995 las partes mantuvieron la esperanza de poder salvar su matrimonio. Al separarse, primero en el hogar y luego fuera de éste, no existía la intención de dar "por rota toda relación matrimonial".

De otra parte, es posible que la causal de trato cruel alegada por la demandada peticionaria señora Gil Bonar ya existiera cuando ésta presentó su demanda. Bajo estas circunstancias, la señora Gil Bonar tenía derecho a que se ventilara su acción de divorcio por dicha causal. Sin embargo, a pesar de que entendemos que se cometió este error, estamos de acuerdo con la mayoría en que el recurso presentado no debe ser expedido.

En el caso de autos, tanto el demandante como la demandada solicitan el mismo remedio: el divorcio. Solamente difieren en los fundamentos para su concesión. En la actualidad, habiendo sido eliminadas las consecuencias que antes conllevaba la determinación de cónyuge culpable o inocente en una acción de divorcio, los efectos de la concesión del divorcio por cualesquiera de estas causales son los mismos.[4]

---

[4] La diferencia existente en cuanto a los beneficios obtenidos por el cónyuge inocente frente al cónyuge culpable en los casos de divorcio ha disminuido dramáticamente con el transcurrir de los años. Ha llegado hasta tal punto que hoy día está virtualmente inoperante. Examinemos algunas disposiciones legales sobre esta cuestión y los cambios que han sufrido:

1. En 1976 se enmendó el Art. 107 del Código Civil, 31 L.P.R.A. sec. 383, que disponía que la custodia y patria potestad de los hijos menores de edad sería del

Estamos, pues, ante un caso en que lo único que se lograría, de acceder a la solicitud de la demandada peticionaria señora Gil Bonar de revocar las sentencias emitidas por el Tribunal de Primera Instancia y el Tribunal de Circuito, sería devolver el caso al foro de instancia para que se ventile su acción de divorcio por la causal de trato cruel. Esto equivale a duplicar los procedimientos para finalmente llegar al mismo resultado, aunque por fundamentos distintos. Esto no se justifica. De probarse la causal de trato cruel, el foro de instancia decretaría la disolución del matrimonio, o sea, proveería el mismo remedio. Las consecuencias legales también serían las mismas, sólo variarían las razones para su concesión. Lo que se está solicitando participa de la naturaleza de una opinión consultiva, pues lo que se le pide a los tribunales es que diriman la polémica que ha surgido entre las partes en cuanto a cuál es la disposición de ley aplicable para obtener el remedio que ambos desean. "[L]os tribunales existen únicamente para resolver · controversias genuinas surgidas entre partes opuestas que *tienen interés real en obtener un remedio que haya de afectar sus relaciones jurídicas*." (Énfasis suplido.) *E.L.A. v. Aguayo*, 80 D.P.R. 552, 558–559 (1958). Además, véanse: *P.P.D. v. P.N.P.*, 140 D.P.R. 52 (1996); *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994); *El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988); R. Serrano Geyls,

cónyuge que hubiera ganado en el divorcio. Se modificó para adjudicar la custodia y patria potestad tomando en cuenta los mejores intereses y el bienestar del menor.

2. En 1979 la Asamblea Legislativa derogó el Art. 106 del Código Civil, 31 L.P.R.A. ant. sec. 382 (1967), que establecía que el cónyuge culpable tenía que devolver las donaciones que le hubiera hecho el cónyuge inocente. Además, disponía que el inocente podía conservar las donaciones que hubiese adquirido del culpable.

3. En 1990 se enmendó el primer párrafo del Art. 761 del Código Civil, 31 L.P.R.A. sec. 2411, que establecía que el cónyuge inocente tenía derecho a disfrutar de la cuota viudal usufructuaria. Actualmente dispone que solamente el cónyuge viudo tendrá derecho a ésta. Es decir, para tener algún derecho al usufructo viudal, es necesario que la persona esté casada con el causante al momento de su muerte.

4. Mediante la Ley Núm. 25 de 16 de agosto de 1995, la Asamblea Legislativa enmendó el Art. 109 del Código Civil, 31 L.P.R.A. sec. 385. Este artículo concedía un derecho de alimentos por necesidad entre ex cónyuges. El Legislador eliminó como requisito para poder recibir alimentos, la referencia hecha a la culpabilidad o inocencia del cónyuge. A estos efectos, véase *Díaz v. Alcalá*, 140 D.P.R. 959 (1996).

*Derecho constitucional de Estados Unidos y Puerto Rico*,
Río Piedras, Ed. C. Abo. P.R., 1986, Vol. I, págs. 116–119.

Además, cabe señalar que es un principio firmemente
arraigado en los procedimientos apelativos que la revisión
se da contra la parte dispositiva de la sentencia, no contra
sus fundamentos. Véanse: *Pagán v. Alcalde Mun. de Ca-
taño*, 143 D.P.R. 314 (1997); *Piñeiro v. Int'l Air Serv. of
P.R., Inc.*, 140 D.P.R. 343 (1996); *Vélez Rodríguez v. Amaro
Cora*, 138 D.P.R. 182 (1995); *Álvarez Figueredo v. González
Lamela*, 134 D.P.R. 374 (1993); *Díaz Martínez v. Policía de
P.R.*, 134 D.P.R. 144 (1993); *Toledo Maldonado v. Carta-
gena Ortiz*, 132 D.P.R. 249 (1992); *Asoc. Hoteles y Turismo
de P.R. v. E.L.A.*, 131 D.P.R. 814 (1992); *García v. Montero
Saldaña*, 107 D.P.R. 319, 331 (1978); *Collado v. E.L.A.*, 98
D.P.R. 111, 114 (1969); *Rodríguez v. Serra*, 90 D.P.R. 776,
777 (1964); *Alum Torres v. Campos del Toro*, 89 D.P.R. 305,
324–325 (1963); *Pueblo v. Club Management, Inc.*, 88
D.P.R. 189, 195 (1963).

Acceder a lo solicitado, aunque técnicamente tenga ra-
zón la demandada peticionaria señora Gil Bonar, constitui-
ría una mala utilización de los escasos recursos con los que
cuenta la Rama Judicial. La revocación de la sentencia sólo
tendría el efecto de que el tribunal de instancia variase los
fundamentos, no el remedio. Reiteramos y reafirmamos la
sabia norma de práctica apelativa de que aunque los fun-
damentos y la disposición de ley en que se funde una sen-
tencia no fuesen los correctos, revocarla con el único pro-
pósito de que ésta se conceda de nuevo, pero basada en
distintos fundamentos o disposición de ley, resulta contra-
rio al objetivo cardinal procesal judicial de dispensar justi-
cia de forma rápida y económica. Véanse: *Vives Vázquez v.
E.L.A.*, 142 D.P.R. 116 (1996); *Rivera v. Insular Wire Pro-
ducts Corp.*, 140 D.P.R. 912 (1996); *Ramallo Brothers v.
Federal Express Corp.*, 129 D.P.R. 499 (1991); *Méndez v.
Ruiz Rivera*, 124 D.P.R. 579, 581 (1989); *Pérez Pascual v.
Vega Rodríguez*, 124 D.P.R. 529, 542 (1989); *Neptune Pac-
king Corp. v. Wackenhut Corp.*, 120 D.P.R. 283, 288 (1988).

Véase, además, Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.([5])

Es norma de política pública que se concedan a las partes los remedios que en derecho procedan. Por eso, los tribunales están para "determinar los derechos de las partes en los procedimientos adversativos ...". (Traducción nuestra.) L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, pág. 74. Esto se debe realizar de una forma justa, rápida, efectiva y eficiente. Exposición de Motivos de la Ley de la Judicatura de Puerto Rico de 1994, Leyes de Puerto Rico, pág. 2801 *et seq.*

Por todo lo antes expuesto, es que concurrimos con la mayoría del Tribunal al denegar el recurso presentado por la demandada peticionaria señora Gil Bonar.

---

([5]) Según señala el profesor Cuevas Segarra:

"En todo proceso adjudicativo, sea de naturaleza judicial, administrativo o de cualquier índole, debe prevalecer el propósito de hallar la verdad y hacer justicia a las partes. Las reglas procesales persiguen viabilizar este propósito, no obstaculizarlo. *J.R.T. v. Autoridad de Comunicaciones*, 81 J.T.S. 39 (Irizarry). La mayor eficacia del sistema procesal se adquiere cuando las normas son interpretadas con el propósito de promover el objetivo fundamental de garantizar una solución justa, rápida y económica de las controversias. En *García Negrón v. Tribunal Superior*, 104 D.P.R. 727, 729 (1976) (Torres), se señala que la razón y finalidad de la norma esbozada es el imperativo que determina su alcance y que es función ineludible del Tribunal Supremo el darle vigencia a esta norma conforme a este elemento teleológico en su aplicación a casos concretos." J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1983, Vol. II, Cap. 1, págs. 5–6.