EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| German J. Brau<br>Demandante<br><br>v.<br><br>E.L.A de Puerto Rico, et als.<br>Demandados Recurridos<br><br>_____<br><br>Asociación Puertorriqueña de<br><br>la Judicatura, representada<br>por su Presidenta<br>Hon. Elizabeth Linares<br>Peticionaria<br><br>v.<br><br>E.L.A de Puerto Rico, et als.<br><br>Demandados Recurridos | Certificación<br><br>2013 TSPR 156<br><br>189 DPR ____ |

Número del Caso: CT-2013-21


Fecha: 31 de diciembre de 2013


Abogado de la Parte Peticionaria:

        Lcdo. Manuel Martínez Umpierre


Abogado de la Parte Demandante Peticionaria:

        Lcdo. Hiram Sánchez Martínez


Abogado de la Parte Demandada Recurrida:

        Lcdo. Juan Marqués Díaz

Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray<br>        Procuradora General


Materia: Certificación


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| German J. Brau<br>    Demandante<br><br>      v.<br><br>E.L.A de Puerto Rico, et als.<br>    Demandados Recurridos | |
| Asociación Puertorriqueña de<br>la Judicatura, representada<br>por su Presidenta Hon. Elizabeth<br>Linares<br>    Peticionaria<br><br>      v.<br><br>E.L.A de Puerto Rico,<br>et als.<br>    Demandados Recurridos | CT-2013-021 |

RESOLUCIÓN

San Juan, Puerto Rico, a 31 de diciembre de 2013.

Hoy cumplimos con nuestro deber constitucional de ser el tribunal de última instancia en nuestro País, a pesar de que la controversia ante nos versa sobre un asunto que afecta directamente a cada juez del Tribunal General de Justicia: el retiro de los miembros de la Judicatura. Ante tal lamentable e incómoda situación en la que nos han puesto las Ramas Políticas, entiéndase, el Gobernador de Puerto Rico y la Asamblea Legislativa, hacemos nuestras las palabras del Juez Asociado del Tribunal Supremo federal, Hon. Stephen G. Breyer:

enfrentamos la seria y embarazosa situación de decidir un asunto que afectará directamente nuestros propios bolsillos; y, al hacerlo, podríamos arriesgar la buena opinión que tiene el Pueblo de este Tribunal en la medida en que esa opinión descansa en la creencia de que sus jueces no persiguen sus propios intereses. Sin embargo, el derecho requiere que los jueces decidan casos en los que tienen interés personal cuando, como en este caso, no existe una disposición para traer otro juez que decida el caso o cuando nadie más puede ocupar su lugar. Tampoco deberían los jueces, quienes están llamados a proteger las causas menos populares y las personas menos populares cuando la Constitución así lo requiera, dejarse influenciar por la potencial situación embarazosa que ello implicaría. Siempre que un Tribunal considere un asunto sobre el cual la opinión pública es fuerte, este se arriesga al rechazo público. No obstante, el Pueblo estadounidense ha entendido la necesidad y la importancia de que los jueces decidan asuntos constitucionales importantes sin tener en cuenta consideraciones de popularidad. <u>Williams v. United States</u>, 535 U.S. 911 (2002) (J. Breyer, Voto particular). (Citas omitidas). (Traducción nuestra).[1]

---

[1] El texto original lee como sigue:

we face the serious embarrassment of deciding a matter that would directly affect our own pocketbooks; and, in doing so, we may risk the public's high opinion of the Court insofar as that opinion rests upon a belief that its judges are not self-interested. But the law requires judges to decide cases in which they have a self-interest where, as here, "'no provision is made for calling another in, or where no one else can take his place.'" Nor should judges, who are called upon to protect the least popular cause and the least popular person where the Constitution demands it, be moved by potential personal embarrassment. Whenever a court considers a matter where public sentiment is strong, it risks public alienation. But the American public has understood the need and the importance of judges deciding important constitutional issues without regard to considerations of popularity. <u>Williams v. United States</u>, 535 U.S. 911 (2002). (Citas omitidas).

**I.**

Hace unos días, el Gobernador de Puerto Rico, Hon. Alejandro García Padilla, firmó la Ley Núm. 162 del 24 de diciembre de 2013 (Ley Núm. 162-2013). Esta ley de vigencia inmediata tiene como propósito reformar el Sistema de Retiro de la Judicatura.

El 30 de diciembre de 2013, la Asociación Puertorriqueña de la Judicatura (Asociación) presentó una Solicitud de Sentencia Declaratoria (Solicitud) ante el Tribunal de Primera Instancia. K AC2013-1042 (905). En esencia, solicitó que esta ley "sea declarada inconstitucional por violar varios artículos de la Constitución del Estado Libre Asociado de Puerto Rico". Solicitud, pág. 6.

Ese mismo día, la Asociación presentó ante nos una Petición de Certificación en la que señaló que más del 60% de los jueces activos son miembros suyos. Sostuvo, además, que estos jueces no deberían atender la petición de sentencia declaratoria por conflicto de interés. Asimismo, destacó que el resto de los jueces activos también se pueden ver afectados directamente por lo que en su día se resuelva en este caso.

La Jueza Superior a quien se le asignó inicialmente el caso se inhibió del mismo mediante Resolución. Luego, el caso fue reasignado al Juez Superior, Hon. Ángel R. Pagán Ocasio, quien emitió inmediatamente una Orden mediante la cual consolidó la Solicitud de epígrafe con una Solicitud

de Sentencia Declaratoria e *Injunction* presentada previamente por el Juez del Tribunal de Apelaciones, Hon. German J. Brau. K PE2013-5512 (904). En síntesis, este también impugnó la constitucionalidad de la referida ley y solicita un *injunction* preliminar y permanente para prohibir que esta sea puesta en vigor. Además, el Juez Pagán Ocasio emitió una Resolución en la que señaló que la Asociación presentó ante nos la Solicitud de Certificación de epígrafe, por lo que entendió prudente aguardar por nuestra determinación. Además, sostuvo que "[s]e ordena a los abogados de los casos consolidados de epígrafe que tan pronto sean notificados de tal determinación nos notifiquen la misma".

Por los fundamentos expuestos a continuación, expedimos el auto de certificación y lo consolidamos con la referida Solicitud de Sentencia Declaratoria e *Injunction* presentada por el Juez del Tribunal de Apelaciones, Hon. German J. Brau. K PE2013-5512 (904).

## II.

### A. *Regla de Necesidad*

Como norma general, un juez debe inhibirse en casos en que tenga conflicto de interés o un prejuicio sobre la controversia o sobre los litigantes. Regla 63 de Procedimiento Civil, 32 L.P.R.A. Ap. V. Sin embargo, el ordenamiento jurídico provee una excepción a esta norma: la Regla de Necesidad. Véase <u>Ramírez de Ferrer v. Mari Bras</u>, 142 D.P.R. 941 (1997); <u>Noriega Rodríguez v. Gobernador</u>, 120 D.P.R. 267 (1988). Al respecto, el Prof. José J. Álvarez

González explica que "[e]sta norma jurisprudencial de antigua estirpe permite, como excepción a las normas sobre inhibición, […] que los jueces participen en la decisión de un pleito en cuyo resultado tengan interés, cuando no sea posible sustituirlos o su participación sea necesaria para constituir quórum en un tribunal colegiado". J.J. Álvarez González, Pensiones de los Jueces, 56 Rev. Jur. U.P.R. 265, 273 (1987). (Citas internas omitidas). De lo contrario, las partes que entablen este tipo de litigio se verían privadas de reclamar ante los Tribunales un remedio adecuado en ley. Íd. Véase, además, Redish y Marshall, Adjudicatory Independence and the Values of Procedural Due Process, 95 Yale L.J. 455, 492-93 (1986).

En palabras del tratadista inglés Frederick Pollock, "el estado de derecho es que, aunque un juez no debe intervenir en un caso en el que tiene interés personal, no solo debe, sino tiene que hacerlo, si el caso no se adjudicaría de otra forma". Frederick Pollock, A First Book of Jurisprudence 270 (6th ed. 1929) ("the settled rule of law is that, although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may, but must do so if the case cannot be heard otherwise"). En tal ocasión excepcional, "[l]as reglas e inhibición o recusación no tienen el efecto de derogar la regla de necesidad porque si así fuese se les negaría a los litigantes su derecho de acceso a un foro". José A. Cuevas Segarra, Práctica Procesal Puertorriqueña, Procedimiento Civil 432-433, Vol. II (1979).

Esta Regla ha sido reconocida e invocada por el Tribunal Supremo de Estados Unidos así como por tribunales de más alta jerarquía de los estados. Véase, Evans v. Gore, 253 U.S. 245 (1920). Véanse, además, Board of Trustees v. Hill, 472 N.E.2d 204 (Ind., 1985); Oakley v. Gainer, 331 S.E.2d 846, (W.Va., 1985); United States v. Will, 449 U.S. 200 (1980). Sobre este particular, el profesor Álvarez González explica que "[l]a más frecuente aplicación de esta regla es precisamente en casos que versan sobre los salarios, pensiones o condiciones de empleo de la Judicatura". Álvarez González, *supra*, citando a Board of Trustees v. Hill, *supra*; Hudson v. Johnstone, 660 P. 2d 1180, 1183 (Alaska 1983); Wagoner v. Gainer, 279 S.E. 2d 636, 639-40 (W. Va. 1981); Olson v. Cory (I), 636 P. 2d 532, 535 (Calif. 1980); United States v. Will, 449 U.S. 200, 211-17 (1980); Stiftel v. Carper, 378 A. 2d 124, 126-27 (Del. Ch. 1977), confirmado subnom. Carper v. Stiftel, 384 A. 2d 2 (Del. 1977); People ex. rel. Illinois Fed. of Teach. v. Lindberg, 326 N.E. 2d 749, 751 (I1. 1975). De esta forma, se evita que este tipo de controversias eluda la revisión judicial reconocida en Marbury v. Madison, 5 U.S. 137 (1803).

Por ejemplo, el Tribunal Supremo federal aplicó esta regla en el 1920 cuando resolvió un caso sobre el carácter contributivo de los salarios de los jueces federales, a pesar de que todos los miembros de esa Curia se veían afectados directamente. Evans v. Gore, *supra*.

En numerosas ocasiones, este Tribunal también se ha visto obligado a invocar la Regla de Necesidad para intervenir en controversias que encierran intereses en conflicto de los miembros de esta Curia. [2] Solo así, los integrantes de este Alto Foro han cumplido con su deber como máximos intérpretes de la ley en Puerto Rico. Art. V, Secs. 1 y 3, Const. E.L.A., L.P.R.A., Tomo 1.

Expuesto lo anterior, veamos las normas que rigen el recurso de certificación intrajurisdiccional.

**B. Recurso de Certificación Intrajurisdiccional**

Mediante este recurso discrecional, el Tribunal Supremo puede traer inmediatamente ante su consideración cualquier caso pendiente ante los foros inferiores cuando se planteen cuestiones noveles de derecho o de alto interés público que incluyan cualquier cuestión constitucional sustancial, la constitucionalidad de una ley, resolución conjunta,

---

[2] Véanse, por ejemplo, In re Toro Goyco, 175 D.P.R. 367 (2009); San Gerónimo Caribe v. E.L.A. II, 174 D.P.R. 766 (2008); San Gerónimo Caribe Project v. A.R.Pe., 174 D.P.R. 640 (2008); San Gerónimo Caribe Project, Inc. v. Administración de Reglamentos y Permisos, 173 D.P.R. 241 (2008); In re Lopez Montalvo, 173 D.P.R. 193 (2008); Krans Bell v. Santarrosa, 172 D.P.R. 731 (2007); In re Toro Goyco, 170 D.P.R. 432 (2007); In re Ramos Mercado, 170 D.P.R. 363 (2007); P.N.P. v. Calderon Gonzalez, 170 D.P.R. 268 (2007); Corp. P. R. Dif. Pub. v. U. G. T., 156 D.P.R. 631 (2002); Virella v. Proc. Esp. Rel. Fam., 154 D.P.R. 742 (2001); Nieves Cruz ex rel. Hernandez Nieves v. Universidad de Puerto Rico, 151 D.P.R. 150 (2000); Rebollo López v. Gil Bonar, 144 D.P.R. 379 (1997); Ramírez de Ferrer v. Mari Bras, 142 D.P.R. 941 (1997); Caquías v. Asoc. Res. Mansiones Río Piedras, 134 D.P.R. 181 (1993); El Pueblo de Puerto Rico v. Echevarria Rodriguez, 128 D.P.R. 752 (1991); In re Arraiza Miranda, 120 D.P.R. 368 (1988); In re Garcia Marrero, 120 D.P.R. 278 (1988); H.E. Vicente Cuesnongle, O.P. v. D.A.C.O., 119 D.P.R. 457 (1987); Pradco Caribe, Inc. v. Tapia, 116 D.P.R. 121 (1986); Campos del Toro v. Ame. Transit Corp., 113 D.P.R. 337 (1982); Monclova v. Fin. Credit Corp., 83 D.P.R. 770 (1961).

resolución concurrente, regla o reglamento. Alvarado Pacheco y Otros v. E.L.A., 2013 T.S.P.R. 64, 189 D.P.R. ___ (2013); U.P.R. v. Laborde Torres y otros I, 180 D.P.R. 253, 272-273 (2010). Véase, además, José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da Ed., Tomo IV, pág. 1541 (1979). Este recurso ha sido utilizado "para atender asuntos que requieren urgente solución, ya sea porque se afecta la administración de la justicia o porque el asunto es de tal importancia que exige una pronta atención". Rivera v. J.C.A., 164 D.P.R. 1, 7 (2005).

El recurso de certificación es de naturaleza excepcional, pues nuestro ordenamiento prefiere que los casos maduren durante el trámite ordinario para evitar determinaciones a destiempo por parte de este Foro. U.P.R. v. Laborde Torres y otros I, supra; Rivera v. J.C.A., supra. Ahora bien, este mecanismo procesal permite que dilucidemos casos que, de lo contrario, evadirían la revisión judicial. Íd., pág. 273; Presidente de la Cámara v. Gobernador, 167 D.P.R. 149, 160-161 (2006).

### III.

**A. Aplicación de la Regla de Necesidad**

Al aplicar la normativa anterior al recurso de marras, es innegable que su resolución puede afectar directamente los intereses de todos los jueces y juezas de este Tribunal. No obstante, según expuesto, nuestra Constitución dispone claramente que "[e]l Poder Judicial de Puerto Rico se ejercerá por un Tribunal Supremo" y que este "será el tribunal de última instancia". Const. E.L.A., supra, Secs.

1 y 3. De hecho, esta Curia es un foro colegiado que solo puede declarar inconstitucional una ley mediante una mayoría del número total de sus jueces, por lo que nuestra participación es necesaria para constituir *quórum*. Const. E.L.A., *supra*, Art. V, Sec. 4. Estas disposiciones constitucionales recogen los principios básicos de la doctrina de separación de poderes, la cual no permite que los jueces del Tribunal General de Justicia seamos sustituidos por otros entes adjudicativos ajenos a esta Rama de Gobierno. Íd.

Consecuentemente, es imprescindible invocar en este caso la Regla de Necesidad. Solo así, aseguramos a las partes demandantes su derecho a tener acceso a un foro judicial que pueda concederle el remedio solicitado, de ello proceder en derecho, con la rapidez que requiere este asunto.

Habiendo invocado la Regla de Necesidad, examinemos si procede la petición de certificación intrajurisdiccional.

**B. *Procedencia del Recurso de Certificación Intrajurisdiccional***

Indudablemente, los casos de epígrafe son unos de alto interés público pues plantean una cuestión constitucional sustancial novel: la constitucionalidad de la Reforma del Sistema de Retiro de la Judicatura. Además, dado la vigencia inmediata de la Ley Núm. 162-2013 y en vista de que más del 60% de los jueces activos son miembros de la Asociación y que el resto de los jueces activos también se podrían ver afectados directamente, este pleito exige la más pronta atención por parte de esta Alta Curia.

Finalmente, la controversia es, en esencia, un asunto de estricto derecho.

Consiguientemente, procede traer los casos de epígrafe ante nos mediante la expedición del auto de certificación intrajurisdiccional. No puede ser de otra forma. Contrario a otras jurisdicciones, nuestra Constitución no provee un mecanismo mediante el cual se delegue la función judicial a un ente externo a la Judicatura. Véase, I.P. Robbins, Justice by the Numbers: The Supreme Court and the Rule of Four--or Is It Five?, 36 Suffolk U. L. Rev. 1, 25 (2002). Véase, además, Oakley v. Gainer, *supra*. La función adjudicativa y de revisión judicial de este Foro es indelegable. Const. E.L.A., *supra*, Art. V. Incluso, ya vimos que la aplicación más frecuente de la Regla de Necesidad es en casos que tratan sobre los salarios, pensiones y emolumentos de la Judicatura. Álvarez González, *supra*.

**De no invocarla, la Ley Núm. 162-2013, aprobada con vigencia inmediata y con aplicación a todos los jueces en funciones, eludiría la revisión judicial reconocida hace más de dos siglos en Marbury v. Madison, *supra*, el cual era un caso que involucraba jueces precisamente. Dicho principio rector de revisión judicial está expresamente dispuesto en nuestra Constitución. Esto equivaldría a una clara abdicación de nuestra obligación constitucional de ser los intérpretes máximos de la Constitución y permitiría que las otras ramas de gobierno priven a la Rama Judicial y a este Tribunal de revisar judicialmente una ley, en clara**

**violación a la doctrina de separación de poderes. Const. E.L.A.,** *supra*, **Secs. 1, 3 y 4. En fin, por más incómodo y antipático que sea, no claudicaremos nuestro deber constitucional de proveer a las partes demandantes un foro en el cual reclamar sus derechos.**

IV.

Por todo lo anterior, declaramos con lugar la Petición de Certificación. En vista del alto interés público que reviste esta controversia y tomando en consideración que la ley impugnada tiene vigencia inmediata, acortamos los términos reglamentarios y concedemos un término de diez (10) días a las partes para presentar sus alegatos, en virtud de la Regla 50 de nuestro Reglamento, 4 L.P.R.A. XXI-B. Además, ordenamos la celebración de una vista oral el 15 de enero de 2014 a las 10:00 a.m. de forma que las partes tengan la oportunidad de exponer sus respectivas posiciones y aclarar las dudas que nos puedan surgir sobre los asuntos planteados.

Publíquese y notifíquese inmediatamente a las partes y al Tribunal de Primera Instancia por teléfono, correo electrónico o fax, y notifíquese posteriormente por la vía ordinaria.

Lo acordó y ordena el Tribunal, y certifica la Secretaria del Tribunal Supremo.


Lcda. Camelia Montilla Alvarado
Secretaria del Tribunal Supremo, Interina